UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SUCRE NUNEZ,

                              Plaintiff,

               -v-

BROADWAY BEAUTY WHOLESALE INC.,

                              Defendant.

19-CV-362 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

     Sucre Nunez brings suit against Broadway Beauty Wholesale Inc. and its owner, Musthafa Kamal (collectively, "Defendants"), claiming that Defendants violated a host of federal and state labor laws during the course of his employment. Nunez has moved for partial summary judgment on the question of liability, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 24.) For the reasons that follow, Nunez's motion is granted in part and denied in part.

**I.    Background**

     **A.    Local Civil Rule 56.1**

     The lion's share of the factual background is taken from Nunez's Statement of Undisputed Facts, which he submitted along with his motion for partial summary judgment in compliance with Local Civil Rule 56.1(a). (*See* Dkt. No. 25 ("SUF").)

     Local Civil Rule 56.1(a) provides that when a party moves for summary judgment, that party is to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The party opposing the motion is to file a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" and include additional paragraphs

plainly stating "additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b).  Unless the party opposing summary judgment "specifically controvert[s]" the moving party's stated facts "by a correspondingly numbered paragraph" in its Rule 56.1(b) counterstatement, "each numbered paragraph in the statement of material facts set forth . . . by the moving party will be deemed to be admitted for purposes of the motion."  Local Civ. R. 56.1(c).  All Rule 56.1 statements "must be followed by citation to evidence which would be admissible."  Local Civ. R. 56.1(d).

Although a district court is not "required to consider what the parties fail to point out in their Rule 56.1 statements," the district court "may in its discretion opt to conduct an assiduous review of the record."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citation omitted).  Even without conducting an assiduous review of the record, the district court must ensure that the record supports assertions made in a Rule 56.1 statement — otherwise, "those assertions should be disregarded and the record reviewed independently."  *Id.* at 74; *see also Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).  Supported facts in a Rule 56.1 statement will be deemed admitted if the opposing party fails to controvert those facts.  *Giannullo*, 322 F.3d at 140 (citing Local Civ. R. 56.1(c)).

Here, Nunez filed an appropriately formatted Rule 56.1(a) statement that supported each factual statement with a citation to the record.  In contrast, Defendants' "Statement of Disputed Facts" (Dkt. No. 28-1 ("SDF")), Defendants' counterstatement, has a bevy of shortcomings.  First, it does not respond to Nunez's statement paragraph by paragraph.  (*See* SDF.)  Second, Defendants' counterstatement uses broad and unhelpful citations referring to the "attached Exhibits" (*see, e.g.*, SDF ¶ 1), when the attached exhibits are dozens of pages of dense number charts and virtually illegible pictures without further contextualization (*see, e.g.*, Dkt. No. 28-2;

Dkt. No. 28-4). Third, the attached exhibits often do not actually support assertions made in Defendants' counterstatement. As an example, the counterstatement asserts that Nunez received paystubs that "included the hours Nunez worked each week for each year." (SDF ¶ 9.) The counterstatement cites "Exhibit A chart" and "attached Exhibits" as support. (*Id*.) The cited exhibits do not include any paystubs or, to the best of the Court's knowledge, any evidence whatsoever purporting to show that Nunez's paystubs included his hours worked. (*See* Dkt. No. 28-2; Dkt. No. 28-4.) It cannot be said that Defendants have "specifically controverted" Nunez's alleged facts. Local Civ. R. 56.1(c).

The Court declines to overlook Defendants' substantial noncompliance with the rule. Having ensured that the assertions made in Nunez's Rule 56.1(a) statement are supported by the record, the Court deems those assertions admitted for the purposes of this motion.

### B. Facts and Procedural History

Broadway Beauty Wholesale is a New York corporation with a store in New York City. (SUF ¶¶ 1, 4.) From 2016 to 2018, Broadway Beauty had annual revenues exceeding $500,000 and engaged in interstate commerce. (SUF ¶¶ 2–3.) Musthafa Kamal was the sole owner and operator of Broadway Beauty during that period. (SUF ¶ 5.) As the owner and operator, Kamal had the power to hire and fire Broadway Beauty employees, set their wages and schedules, and maintain their records. (SUF ¶ 6.) Nunez was Defendants' employee, working as an in-store sales clerk who also stacked products and received deliveries. (SUF ¶ 9.) He had neither executive nor administrative responsibilities. (SUF ¶ 10.) Nunez affirmed that he started working for Defendants in August 2003 and that he "worked there continuously . . . through August 25, 2018." (Dkt. No. 27-1 ¶ 6.) Nunez did not fill out paperwork when he was hired and neither received nor signed a notice from Defendants describing the parameters of his pay. (SUF

¶¶ 38–39; Dkt. No. 27-5 at 31:5–31:15, 73:6–73:12.)

Since 2014, Nunez was paid every two weeks, partly by cash and partly by check generated by a payroll company. (SUF ¶¶ 16–18.) The paystubs did not reflect Nunez's cash payments, nor did the paystubs include the hours Nunez worked. (SUF ¶¶ 21–22; Dkt. No. 27-1 (Nunez's paystubs).) Nunez was paid a fixed lump sum salary regardless of the number of hours he worked in a week, and he never discussed an hourly rate with Defendants. (SUF ¶¶ 23, 30.) Throughout his employment, with one noted exception, Nunez worked Monday through Saturday from 9:00 A.M. to 7:00 P.M. with a half-hour lunch break, for a total of fifty-seven hours per week. (SUF ¶¶ 31–34.) For the purposes of this motion only, Nunez accepts Defendants' contention that in 2017 he worked only thirty-seven hours per week. (Dkt. No. 29 at 5 & n.3.)

In 2014, Defendants paid Nunez $500 by check and $500 in cash every two weeks. (SUF ¶ 26.) In 2015 and 2016, Defendants paid Nunez $540 by check and $500 in cash every two weeks. (SUF ¶ 27; Dkt. No. 27-5 at 56:9–56:14.) For the purposes of this motion only, Nunez accepts Defendants' contention that from January 2017 through mid-April 2017, Defendants paid Nunez $600 by check every two weeks. (SUF ¶ 28 & n.6; Dkt. No. 27-5 at 50:10–51:4.) In 2018, Defendants paid Nunez $840 by check and $500 in cash every two weeks. (SUF ¶ 29; Dkt. No. 27-5 at 46:21–47:7.)

Nunez filed suit against Defendants on January 14, 2019, alleging that Defendants' business practices violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190, 650 *et seq.*, and New York's Wage Theft Prevention Act, N.Y. Lab. Law § 195. (*See* Dkt. No. 1 ¶¶ 1–2.) Following the completion of discovery, on November 27, 2019, Nunez moved for partial summary judgment on the issue

4

of liability pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (*See* Dkt. No. 24.)

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14-cv-4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12-cv-5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014).  The Court must view all evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks and citations omitted).

## III.    Discussion

There are five issues before the Court: (1) whether Defendants paid Nunez the minimum wage under the NYLL for part of 2017 and 2018; (2) whether Defendants paid Nunez proper overtime compensation under the FLSA and the NYLL; (3) whether Nunez is entitled to liquidated damages under the FLSA and the NYLL; (4) whether Nunez is entitled to prejudgment interest under the NYLL; and (5) whether Nunez is entitled to summary judgment

on his Wage Theft Prevention Act claims.[1]  (*See* Dkt. No. 26.)  The issues are discussed in turn.

### A.      **Unpaid Minimum Wage**

Nunez argues that he is entitled to summary judgment on his claim that Defendants failed to pay him New York's minimum wage in 2017 and 2018, as is required by the NYLL.  "Every employer of ten or less [sic] employees shall pay to each of its employees for each hour worked in the city of New York a wage of not less than: $10.50 per hour on and after December 21, 2016, [and] $12.00 per hour on and after December 31, 2017 . . . ."  N.Y. Lab. Law § 652(1)(a)(ii).  In determining whether employers are liable for minimum wage violations, courts "consider the employee's average hourly wage, which is determined by dividing the total remuneration for employment in any workweek by the total number of hours actually worked in that workweek for which such compensation was paid."  *Williams v. Epic Security Corp.*, 358 F. Supp. 3d 284, 302 (S.D.N.Y. 2019) (citing *Huang v. GW of Flushing I, Inc.*, No. 17-CV-3181, 2019 WL 145528, at *5 & n.4 (E.D.N.Y. Jan. 9, 2019)).

For the purposes of this motion, it is undisputed that from January 2017 through April 2017, Defendants paid Nunez $600 every two weeks, or $300 per week.  (SUF ¶ 28 & n.6; Dkt. No. 27-5 at 50:10–51:4.)  It is also undisputed that Nunez worked thirty-seven hours per week during that period.  (Dkt. No. 29 at 5 & n.3.)  As a matter of basic arithmetic, a weekly wage of $300 divided by thirty-seven hours per week amounts to an hourly wage of $8.11, lower than the minimum wage of $10.50 per hour that applied throughout 2017.

---

[1] As a preliminary matter, the Court concludes that the relevant FLSA and NYLL provisions apply to Defendants.  It is undisputed that Defendants are "employer[s]" within the meaning of the FLSA and NYLL.  *See* 29 U.S.C. § 207(a)(1); N.Y. Lab. Law § 652(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (2020).  And it is undisputed that Defendants engaged in interstate commerce and had greater than $500,000 in sales during the relevant period (*see* SUF ¶¶ 2–3), as is required for liability under the FLSA.  *See* 29 U.S.C. §§ 203(s)(1)(A)(i)–(ii), 207(a)(1).

It is undisputed that in 2018, Defendants paid Nunez $1,340 every two weeks, or $670 per week (SUF ¶ 29; Dkt. No. 27-5 at 46:21–47:7), and worked fifty-seven hours per week, (SUF ¶¶ 31–34). Again, a weekly wage of $670 divided by fifty-seven hours per week amounts to an hourly wage of $11.75, lower than the minimum wage of $12.00 per hour that applied throughout 2018.

Evidently, Defendants failed to pay Nunez the minimum wage as established by the NYLL for part of 2017 and 2018. To rebut this conclusion, Defendants attempt to use the yearly amount they paid to Nunez to show Nunez was paid a minimum wage. (*See* Dkt. No. 28 at 2.) However, "[t]he minimum and overtime wage provided by [statute] shall be required for *each week of work*, regardless of the frequency of payment . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.9 (2020) (emphasis added). In other words, New York law requires the minimum wage to be evaluated on a weekly basis, and Defendants' argument "based on salary annualization is wholly unavailing." *Karic v. Major Auto. Cos.*, 992 F. Supp. 2d 196, 201 (E.D.N.Y. 2014). Thus, Nunez is entitled to summary judgment as to liability on this claim.

    **B.**    **Unpaid Overtime Compensation**

Nunez claims that Defendants failed to pay him proper overtime compensation under the FLSA and the NYLL. When employees work more than forty hours in a workweek, they are to "receive[] compensation for [their] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1); *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2020). "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other [*i.e.* state] legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum . . . ." 29 C.F.R.

§ 778.5. Under the NYLL, the regular rate is to be calculated "in the manner and methods provided in and subject to the exemptions of" the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2020). It follows that if an employee is paid less in a week than what a standard overtime calculation using the state minimum wage would require, the employer is liable for violating the FLSA and NYLL overtime provisions.

The below table, using the applicable New York minimum wages in 2014, 2015, 2016, and 2018,[2] shows that Nunez was paid less than what an overtime premium incorporating the minimum wage would require:

| Year | Minimum Wage (x) | Hours Worked per Week (y) | Minimum Amount Owed per Week (x*40)+(1.5*x*(y-40)) | Actual Amount Received per Week |
|---|---|---|---|---|
| 2014 | $8.00 | 57 | $524.00 | $500.00 |
| 2015 | $8.75 | 57 | $573.13 | $520.00 |
| 2016 | $9.00 | 57 | $589.50 | $520.00 |
| 2018 | $12.00 | 57 | $786.00 | $670.00 |

Defendants are liable for failing to pay Nunez overtime under the NYLL in 2014, 2015, 2016, and 2018 and under the FLSA in 2018.

---

[2] These are the years within the NYLL's six-year statute of limitations, N.Y. Lab. Law §§ 198(3), 663(3), and for which it is undisputed that Nunez worked more than forty hours per week (SUF ¶¶ 31–34). The statute of limitations for the FLSA is two years, unless the cause of action arises out of a "willful violation," in which case the statute of limitations is three years. 29 U.S.C. § 255(a). District courts generally leave the question of willfulness to the trier of fact. *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (collecting cases). Accordingly, the Court in resolving this motion for summary judgment will apply the standard two-year statute of limitations, only considering whether Defendants violated the FLSA in 2018. *See Inclan v. New York Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) (noting the "general reluctance of courts to resolve the question of willfulness on a motion for summary judgment").

### C. Liquidated Damages

Nunez claims that Defendants are liable for liquidated damages under the FLSA and the NYLL.  "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).  However, the statute permits district courts to deny liquidated damages if an employer can show that "it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Id.* (quoting 29 U.S.C. § 260).  An employer acting in subjective good faith must have taken "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Id.* (internal quotation marks and citation omitted).  The employer's burden is heavy, and an award of single damages is unusual.  *Id.*  The NYLL employs the same standard, allowing for liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a); *see also De Jesus v. Empire Szechuan Noodle House Inc.*, No. 18-cv-1281, 2019 WL 1789901, at *5 (S.D.N.Y. Apr. 24, 2019).  "A defendant's failure to point to any evidence sufficient to make such a showing [of good faith] may warrant awarding [liquidated] damages at the summary judgment stage." *De Jesus*, 2019 WL 1789901, at *5 (citing *Barfield*, 537 F.3d at 151).

Defendants point to no evidence that they took active steps to ascertain the dictates of and comply with federal or state labor law.  The closest Defendants come to asserting that they acted in good faith is stating that any minimum wage or overtime shortfalls were "miscalculation[s]."  (Dkt. No. 28 at 2–4.)  This, however, is an *ex post facto* explanation for their failure to adhere to the relevant laws, not evidence of any active step to act in accordance with them.  Defendants have not shown that there is any genuine dispute as to Nunez's entitlement to liquidated

9

damages. Thus, Nunez is entitled to summary judgment on his claim of liquidated damages under either the FLSA or the NYLL,[3] the exact amount to be determined in a later proceeding.

### D.     Prejudgment Interest

Under the NYLL, an employee with a successful wage claim is entitled to "prejudgment interest." N.Y. Lab. Law § 198(1-a). The prejudgment interest rate is nine percent per year. N.Y. C.P.L.R. § 5004. Nunez is entitled to prejudgment interest, though the precise dollar value of payment depends on the date on which his claims arose and will be determined in a later proceeding. *See Ji Li v. New Ichiro Sushi, Inc.*, No. 15-cv-414, 2020 WL 2094095, at *9 (S.D.N.Y. Apr. 30, 2020).

### E.     Wage Statement Claims

Nunez argues that he is entitled to summary judgment on his claims that Defendants failed to provide the wage-and-hour notices and wage statements required by the NYLL.

#### 1.     Wage-and-Hour Notices

NYLL Section 195(1)(a) mandates that employers provide their employees

> in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer;

---

[3] The FLSA and NYLL do not allow "duplicative liquidated damages for the same course of conduct." *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam).

> plus such other information as the commissioner deems material and necessary.

The NYLL also requires employees to return to the employer a signed and dated acknowledgment of receipt of this notice. N.Y. Lab. Law. § 195(1)(a). The relevant enforcement provision of the NYLL provides that employees may recover if they are "not provided [such notice] within ten business days of [their] first day of employment." N.Y. Lab. Law § 198(1-b).

It is well established that this enforcement provision of the NYLL—which went into effect on April 9, 2011, as part of New York's Wage Theft Prevention Act—does not apply retroactively. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 510 (S.D.N.Y. 2017); *see also Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143–44 (2d Cir. 2013) (holding that the Wage Theft Prevention Act is non-retroactive). It follows that "an employee who began working before the [Act] took effect on April 9, 2011, may not bring a claim for an employer's failure to provide wage notices." *Gamero*, 272 F. Supp. 3d at 510 (S.D.N.Y. 2017) (internal quotation marks and citation omitted); *Remache v. Mac Hudson Grp.*, No. 14-cv-3118, 2018 WL 4573072, at *16 (E.D.N.Y. Sept. 7, 2018) (collecting cases).

Nunez himself alleges that he began working for Defendants in August 2003. (SUF ¶ 13.). This means that Nunez was hired before April 9, 2011, and that he is not entitled to summary judgment on his wage-and-hour notice claim.

### 2. Wage Statements

NYLL Section 195(3) requires that employers

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis

11

> thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages. . . . For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

The relevant enforcement provision of the NYLL, also adopted as part of New York's Wage Theft Prevention Act, provides that employees who do not receive proper wage statements "shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars[.]" N.Y. Lab. Law § 198(1-d). Unlike the enforcement provision for addressing deficient wage-and-hour notices, this enforcement provision allows recovery for noncompliance that occurs well after an employee's first ten days at a job.

Nunez is entitled to summary judgment on his claim that Defendants' paystubs were deficient. It is evident from the most recent paystubs Nunez received, covering the period from January 2018 to August 2018, that those paystubs lacked information on the required regular hourly rate of pay, overtime rate of pay, number of regular hours worked, and number of overtime hours worked. (*See* Dkt. No. 27-1 (Nunez's paystubs).) Although NYLL § 198(1-d) affords employers an affirmative defense to claims of deficient paystubs, the defense is available only when employers make "complete and timely payment of all wages due." N.Y. Lab. Law § 198(1-d). Because Defendants did not pay Nunez the minimum wage or appropriate overtime wages in 2018, they cannot invoke the defense. Defendants are liable for violating the wage statement provision of the NYLL. *See De Jesus*, 2019 WL 1789901, at *5.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part. The Court GRANTS summary judgment on the question of liability for Nunez's 2017 and 2018 NYLL minimum wage claims; 2018 FLSA overtime claim; 2014, 2015, 2016, and 2018 NYLL overtime claims; FLSA or NYLL liquidated damages claim; NYLL prejudgment interest claim; and NYLL wage statement claim. The Court DENIES summary judgment on the question of liability for Nunez's NYLL wage-and-hour notice claim. Damages will be calculated in a later proceeding.

The parties are directed to confer and submit a joint letter within 21 days with their proposals for further proceedings.

The Clerk of Court is directed to close the motion at Docket Number 24.

SO ORDERED.

Dated: October 14, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge